IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| QBE INSURANCE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:08-cv-949-MEF |
| | ) | |
| WALTER GRIFFIN and MARY HOWARD, | ) | (WO) |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

### INTRODUCTION

Plaintiff QBE Insurance Corporation ("QBE") filed this declaratory judgment action against Walter Griffin ("Griffin") and Mary Howard ("Howard") on December 3, 2008. (Doc. # 1.) QBE seeks a declaration that it has no duty to defend Griffin in an underlying state court lawsuit brought by Howard. A law firm not involved in this declaratory judgment action, Haskell, Slaughter, and Gallion, represents Griffin in the state court proceedings.[1] The Case is presently before the Court on a Rule 72(a) Objection to Chief Magistrate Judge Walker's Order granting Defendant Mary Howard's Third Motion to Compel. (Doc. # 44.) The Court has carefully considered the submissions of the parties and the applicable authorities and has reviewed a recording of the hearing before the Magistrate Judge. For the

---

[1] Haskell, Slaughter, and Gallion filed a Motion to Intervene in support of the Objections. (Doc. # 45). Because the Court sustains the objections with regard to the interests they seek to protect, the Motion to Intervene is due to be DENIED as moot.

-1-

reasons set forth below, the Court finds that the objections are due to be SUSTAINED in part and OVERRULED in part.

## FACTUAL AND PROCEDURAL BACKGROUND

As Chief Magistrate Judge Walker observed during the hearing on the motion in issue, discovery in this case has not proceeded smoothly. The latest incident is Howard's Third Motion to Compel Production of Documents. (Doc. # 37.) By that Motion, Howard sought an order directing QBE to respond to a series of requests for production. The requests to which QBE objected, numbered 4, 5, 7, 8, 9, 10, 11, 12, 13, 14, and 15, requested the following documents:

**Request No. 4:** Any and all correspondence, documents, emails or writings of any kind sent from you to the attorneys at Haskell, Slaughter and Gallion regarding their defense of Walter Griffin in the Mary Howard case.

**Request No. 5:** Any and all correspondence, documents, emails or writings of any kind sent from you to Walter Griffin's attorneys at Haskell, Slaughter and Gallion from 2006 to the present that are not included in your response to Request No. 4.

**Request No. 7:** Any and all correspondence, documents, emails or writings of any kind reflecting that you exercised your enhanced obligation of good faith to your insured, Walter Griffin.

**Request No. 8:** Any and all correspondence, documents, memorandums, emails, interoffice emails, inter-office memorandums, or writings of any other kind reflecting that you and the attorneys at Haskell, Slaughter and Gallion understood that your insured, Walter Griffin was the client in the Mary Howard case.

**Request No. 9:** Any and all correspondence, documents, emails or writings of any kind sent from you to the attorneys at Haskell, Slaughter and Gallion regarding their representation of Walter Griffin in the Mary Howard case.

**Request No. 10:** Any and all documents, correspondence, memorandums, emails, interoffice emails, inter-office memorandums or writings of any kind reflecting any

concerns you had for your monetary interests in the Mary Howard case.

**Request No. 11:** Any and all documents, correspondence, memorandums, emails, interoffice emails, inter-office memorandums or writings of any kind reflecting your concern, if any, for your insured's financial risk in the Mary Howard case.

**Request No. 12:** Any and all correspondence, documents, emails or writings of any kind that reflect your understanding stated with specificity and in detail regarding the duties and responsibilities of Walter Griffin as vice president or any other office of Southeast Pallet and Box/Kopac.

**Request No. 13:** Any and all documents, correspondence, memorandums, emails, interoffice emails, inter-office memorandums or writings of any kind either from you to your attorneys of [sic] from your attorney's [sic] to you, regarding Walter Griffin's potential liability in the Mary Howard case.

**Request No. 14:** Any and all correspondence, documents, emails or writings of any nature and kind sent by you to your insured regarding any and all developments in your investigation relevant to his policy coverage and the progress of his lawsuit.

**Request No. 15:** To the extent not already produced, any and all documents, correspondence, email or any other writings you have received from Haskell, Slaughter and Gallion regarding the Mary Howard case to the present.

Howard propounded these requests for production on February 27, 2009.  However, at that time Howard had not filed her initial disclosures in violation of the Court's Uniform Scheduling Order and Federal Rule of Civil Procedure 16.  On April 11, 2009, Howard sent QBE a ten-day letter requesting responses to her discovery requests.  QBE responded in a letter dated April 22, 2009, claiming that the documents requested were immaterial and irrelevant and that it did not intend to engage in discovery until Howard filed her initial disclosures.

On May 27, 2009, Howard filed her initial disclosures.  QBE began preparing its

responses to Howard's first requests for production upon receipt of the initial disclosures and tendered those responses on June 11, 2009. Part of the responses included objections to many of the above-detailed requests. QBE objected that much of the material requested was irrelevant to the declaratory judgment action and was attorney work-product prepared by Haskell, Slaughter and Gallion in the course of its representation of Griffin in the underlying state case.

In response to QBE's objections, Howard filed a Motion to Compel Production of Documents on July 6, 2009. (Doc. # 37.) Chief Magistrate Judge Walker held a hearing on the Motion on July 30, 2009. At the conclusion of the hearing, she granted the Motion because she found that QBE waived its objections to the propounded requests for production because it did not object within thirty days of service. While she did discuss the arguments made in the Motion and QBE's Response, Magistrate Judge Walker did not orally recognize at the hearing that many of the documents sought by Howard were attorney work-product.

Pursuant to Federal Rule of Civil Procedure 72, QBE filed objections to Magistrate Judge Walker's Order on August 7, 2009. (Doc. # 44.) QBE makes substantially the same arguments in its objections as it made in response to the Motion to Compel: first, that it had good cause for the delay in filing objections; second, that much of the information sought is protected by the attorney-client and work-product privileges; third, that the information sought is irrelevant to the declaratory judgment action; and finally, that some of the requests are ambiguous.

## DISCUSSION

The Court finds that by failing to object to the propounded requests for production within thirty days of service, QBE waived its objections as to relevance and ambiguity. Chief Magistrate Judge Walker's Order on these issues was neither clearly erroneous nor contrary to law and was in accord with well-established practice in this district. *See Alexander v. Certegy Check Servs., Inc.*, No. 2:05-CV-449-MHT, 2006 WL 1515841 (M.D. Ala. May 30, 2006); *see also Ramirez v. County of Los Angeles*, 231 F.R.D. 407, 409 (C.D. Cal. 2005) ("If a party fails to file timely objections to [discovery] requests, such a failure constitutes a waiver of any objections which a party might have to the requests."); *Krewson v. City of Quincy*, 120 F.R.D. 6, 7 (D. Mass. 1988) (same); *Third Party Verification, Inc. v. SignatureLink, Inc.*, No. 6:06-CV-415, 2007 WL 1288361 (M.D. Fla. May 2, 2007) (same). The circumstances in this case with respect to the attorney work-product and attorney-client privileges, however, command an exception to this general rule of waiver.

QBE was unable to waive the attorney work-product privilege. Unlike the attorney-client privilege, which belongs only to the client, the work-product privilege is shared between the attorney and the client.[2] *See In re Antitrust Grand Jury*, 805 F. 2d 155, 164 (6th Cir. 1986). "[A]n attorney may not unilaterally waive the privilege that his client enjoys." *Hanson v. U.S. Agency for Intern. Dev.*, 372 F. 3d 286, 294 (4th Cir. 2004) (discussing the

---

[2]For purposes of ruling on the Objections, the Court assumes, without deciding, that the documents QBE objects to producing are covered by the work-product privilege. The Court leaves any dispute about the application of the work-product privilege to particular documents for resolution by the Magistrate Judge in the first instance.

attorney opinion work-product privilege).  Nor can the client unilaterally waive the privilege; the attorney may contest disclosure even in the face of a client's waiver. *Catino v. Travelers Ins. Co., Inc.*, 136 F.R.D. 534 (D. Mass. 1991). The privilege thus belongs to both Haskell, Slaughter, and Gallion and Griffin, but not to QBE.  Hence, QBE was, even by failure to object to the propounded requests for production, not free to waive the work-product privilege.   Moreover, Griffin is represented by different counsel in the underlying state case than is QBE in the federal declaratory judgment action.  It would be manifestly unjust and contrary to law to allow QBE's counsel's inaction in the federal case to waive the privilege that belongs to Griffin and Haskell, Slaughter, and Gallion.

Courts have rightly been hesitant to find implied waivers of the attorney work-product privilege.  For example, the Third Circuit has held that "a party waives the [work-product] privilege only when he or she 'has made the decision and taken the affirmative step in the litigation to place the advice of the attorney in issue.'" *U.S. Fire Ins. Co. v. Asbestospray, Inc.*, 182 F. 3d 201, 212 (3d Cir. 1999); *see also In re Lott*, 139 Fed. Appx. 658, 660 (6th Cir. 2005) ("To be sure, litigants cannot hide behind the privilege if they are relying upon privileged communications to make their case. '[T]he attorney-client privilege cannot at once be used as a shield and a sword.' . . . But, while the sword stays sheathed, the privilege stands."); *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F. 3d 726, (8th Cir. 2002) (noting that when assessing a claim of implied or passive waiver of the work-product privilege, "the Court must not only look at whether [the party] intended to waive the privilege, but also

whether the interests fairness and consistency mandate a finding of waiver.").

Applications in other contexts support prevention of casual waivers of the work-product privilege. As the Eleventh Circuit has held, some forms of privilege waiver are inapplicable to attorney work-product. For example, subject-matter waiver, which provides that a party loses the privilege by injecting an issue into the case that in fairness requires an examination of communications otherwise protected by the attorney-client privilege, does not extend to materials protected by the work-product privilege. *Cox v. Administrator U.S. Steel & Carnegie*, 17 F. 3d 1386, 1422 (11th Cir. 1994) ("Where a party asserts that he believed his actions to be lawful, he waives the attorney-client privilege as to what his attorney told him about the legality of his actions . . . ; his attorney's work-product, however, is a different matter."). Courts are particularly strict with respect to so-called "opinion" work-product, which is what the propounded requests appear to seek. *See Williamson v. Moore*, 221 F.3d 1177, 1182-83 (11th Cir. 2000) (holding that opinion work-product enjoys "almost absolute immunity" from discovery); *Cox*, 17 F.3d at 1422 (same); *see also In re EchoStar Commc'ns Corp*, 448 F. 3d 1294, 1302 (Fed. Cir. 2006) ("Second, a party may discover work-product if the party waives its immunity. . . . However, work-product waiver is not a broad waiver of all work-product related to the same subject matter like the attorney-client privilege. . . . Instead, work-product waiver only extends to "factual" or "non-opinion" work-product concerning the same subject matter as the disclosed work-product."); *In re Martin Marietta Corp*, 856 F. 2d 619, 624 (4th Cir. 1988) (holding that

employer's prior disclosures to Government in attempt to settle criminal investigation against company constituted waiver of attorney-client privilege and non-opinion work-product privilege, but did not constitute waiver of opinion work-product privilege); *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F. 3d 289, 294 (6th Cir. 2002) (noting that opinion work-product is available upon a showing of substantial need and inability to otherwise obtain without material hardship, but that "absent waiver, a party may not obtain the 'opinion' work-product of his adversary").

Similar logic applies to the assertions of attorney-client privilege. QBE nominally objects that the materials are protected by the attorney-client privilege, but devotes no argumentation in support of, and provides no authority for, this assertion. Nevertheless, as was the case with the work-product privilege, QBE does not own the attorney-client privilege it asserts and so cannot waive it. The attorney-client privilege belongs to the client, Griffin. *In re Grand Jury Proceedings*, 73 F.R.D. 647, 652 (M.D. Fla. 1977) ("The privilege, however, belongs to the client, not the attorney; and an attorney can neither invoke nor waive the privilege if his client desires to the contrary."). It is only he who can waive the privilege. *Id.*[3] Moreover, binding former Fifth Circuit authority suggests that failure to assert even one's own attorney-client privilege in a timely manner does not waive the privilege even

---

[3] Again, the Court assumes, without deciding, that the materials in question are protected from discovery by the attorney-client privilege. The Court has serious reservations about this assumption, however, as the documents were requested from a third party, QBE, and the privilege is between Haskell, Slaughter and Gallion (the attorneys) and Howard (the client). The Court leaves any dispute about the application of the attorney-client privilege to particular documents for resolution by the Magistrate Judge in the first instance.

when the privilege is asserted for the first time in a motion for reconsideration of a district court's order to produce. *FDIC v. Cherry, Bekaert & Holland*, 131 F.R.D. 596, 606 (M.D. Fla. 1990) (citing *Southern Railway Co. v. Lanham*, 403 F.2d 119, 133-134 (5th Cir.1968)).[4]

## CONCLUSION

For the foregoing reasons, the Court finds that QBE's failure to object to the propounded requests for production did not waive the attorney work-product privilege or the attorney-client privilege between Haskell, Slaughter and Gallion and Griffin. The waiver was good, however, with respect to QBE's relevance objections and its objections that some of the requests are ambiguous. Therefore, it is hereby

ORDERED that the Objections (Doc. # 44) are SUSTAINED in part and OVERRULED in part. The objections are sustained with respect to assertions of work-product and attorney-client privileges, and are overruled in all other respects. Accordingly, the portion of Magistrate Judge Walker's Order directing production of documents covered by the attorney-client or work-product privileges is VACATED. This Opinion and Order has no effect on the balance of Magistrate Judge Walker's Order.

It is further ORDERED that the Motion to Intervene (Doc. # 45) is DENIED as moot.

Done this 4th day of September, 2009.

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE

---

[4]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*), the Eleventh Circuit Court of Appeals adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.